UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCISCO ALEJANDRO ZUNIGA
CORONADO,

    Plaintiff,

v.

S&J CARPETING, LLC, et al.,

    Defendants.

_____/

Case No. 1:25-cv-783

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff Francisco Alejandro Zuniga Coronado brings this employment lawsuit against Defendants S&J Carpeting, LLC, and Jonathan Sanchez Cervantes under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, and Michigan's Improved Workforce Opportunity Wage Act (IWOWA), Mich. Comp. Laws §§ 408.931–408.945.  Coronado alleges that Defendants failed to pay him overtime, paid him late on several occasions, failed to pay him on one occasion, and terminated him in retaliation for bringing these issues to their attention.  Neither defendant has responded to Coronado's complaint, and the Clerk of Court entered a default as to both defendants on November 6, 2025 (ECF No. 11).  Coronado now moves for a default judgment (ECF No. 12). For the reasons explained below, the Court will deny the motion without prejudice.

## **I. BACKGROUND**

Coronado was employed by Defendants to assist with flooring installation from March to June of 2024.  (Compl. ¶¶ 22–23, ECF No. 1.)  Coronado worked primarily in Grand Rapids, Michigan, with two weeks spent in Indiana.  (*Id.* ¶ 24.)  He generally worked Monday through

Saturday from 8:00 a.m. to 8:00 p.m., and "averag[ed] 50 to 60 hours per week."  (*Id.* ¶ 26.)[1]

Defendants paid him a flat rate of $170 per day, and did not pay him overtime.  (*See id.* ¶¶ 28, 36.)

Overall, Coronado "generally earned $800.00 per week."  (Pl.'s Aff. ¶ 4, ECF No. 12-3.)  "On at

least 5 occasions, [Coronado] received paychecks from Defendants that were returned" for

insufficient funds.  (Compl. ¶ 29.)  The convenience store at which Coronado cashed the checks

initially paid him the funds, but later sought to recover the money when the checks bounced.  (Pl.'s

Aff. ¶ 13.)  When Coronado raised the issue with Defendants, "they provided replacement checks,

but those checks were also returned for insufficient funds."  (*Id.* ¶ 12.)  Defendants eventually

repaid the funds for four of those paychecks, but Coronado never received the funds for the fifth.

(*Id.* ¶ 23.)  Coronado "was terminated after raising concerns about several checks issued to [him]

that had insufficient funds and request[ing] . . . payment for the work [he] performed."  (*Id.* ¶ 14.)

Although he obtained subsequent employment, he earned less money than he had been making

with Defendants.  (*See id.* ¶¶ 15–17.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default judgments.  *See* Fed. R.

Civ. P. 55.  Before requesting a default judgment, the plaintiff must seek an entry of default from

the clerk.  *See* Fed. R. Civ. P. 55(a).  Once a default has been entered, there are two mechanisms

for the entry of a default judgment: by the clerk or by the Court.  The clerk must enter default

judgment upon the plaintiff's request if the claim "is for a sum certain or a sum that can be made

certain by computation" and the defendant is a legally competent adult who has failed to appear.

Fed. R. Civ. P. 55(b)(1).  Otherwise, the plaintiff must request default judgment from the Court,

---

[1] As discussed below, Coronado states elsewhere that he only worked Monday through Friday.  (*See* Pl.'s Aff. ¶ 8, ECF No. 12-3.)

which makes a discretionary determination as to whether such judgment is warranted.  *See* Fed. R. Civ. P. 55(b)(2); *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013).

In ruling on a motion for default judgment under Rule 55(b)(2), the Court considers the following factors: "1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits."  *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002).  "Default judgment on a particular claim can stand only if there was a sufficient basis in the pleadings for the judgment entered."  *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 410 (6th Cir. 2022) (internal quotation marks omitted).  In determining whether default judgment is warranted, the Court accepts the factual allegations in the complaint as true, except as it relates to damages. *Id.* at 403.  "Where damages are unliquidated a default admits only the defaulting party's liability and the amount of damages must be proved."  *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)).  "The district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Id.*

### III. ANALYSIS

Coronado brings claims for (1) unpaid overtime under the FLSA and IWOWA, (2) failure to pay minimum wage under the FLSA and IWOWA, and (3) retaliation under the FLSA.  Before granting default judgment, the Court must determine whether Coronado has sufficiently alleged facts to state a claim.  The Court will address each claim in turn.

#### A. Unpaid Overtime

The FLSA provides that any employee "who in any workweek is engaged in [interstate] commerce or in the production of goods for [interstate] commerce, or is employed in an enterprise

engaged in [interstate] commerce or in the production of goods for [interstate] commerce, for a workweek longer than forty hours" must be paid for any hours worked in excess of forty "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "To succeed on an unpaid overtime claim under the FLSA, a plaintiff must establish: (1) an employer-employee relationship; (2) that the employer or its employees [we]re engaged in interstate commerce; (3) that the employee worked more than forty hours; and (4) that overtime was not paid." *Stansbury v. Faulkner*, 443 F. Supp. 3d 918, 925 (W.D. Tenn. 2020). Here, Coronado's allegations establish that (1) Defendants employed him (Compl. ¶¶ 18–22); (2) Defendants were engaged in interstate commerce, insofar as Coronado's work took him across state lines (*id.* ¶¶ 24); (3) Coronado worked more than forty hours a week (*id.* ¶ 26); and (4) Defendants did not pay Coronado overtime (*see id.* ¶ 36.) Thus, Coronado has sufficiently alleged an FLSA claim for unpaid overtime.

IWOWA similarly entitles employees to time-and-a-half pay for overtime. *See* Mich. Comp. Laws § 408.934. But IWOWA "does not apply to an employer that is subject to the minimum wage provisions of the fair labor standards act . . . unless those federal minimum wage provisions would result in a lower minimum hourly wage than provided in this act." Mich. Comp. Laws § 408.940(1) (2019). And while here the FLSA minimum wage is lower than IWOWA's minimum wage, that means only that the minimum wage provisions of IWOWA apply, not the overtime provisions. When "an employer is subject to this act only by application of this" exception to the exception—i.e., when the state minimum wage is higher than the federal—the statute provides that "Section 4a," which governs overtime pay, "does not apply." *Id.*

4

§ 408.940(1)(a).[2] Thus, because Coronado's employer was covered by the FLSA, he cannot bring an IWOWA claim for overtime.

In addition, although Coronado has stated an FLSA overtime claim, he has not satisfied his burden of proving damages with reasonable certainty. The damages to which Coronado is entitled are a function of (1) his weekly hours and (2) his regular hourly rate.[3] As to the first, Coronado states in an affidavit that he "typically worked 55 hours per week." (Pl.'s Aff. ¶ 19.) As to the second, Coronado calculates his hourly rate by dividing his weekly pay by his weekly hours. But here the numbers become murky. Coronado alleges in his complaint that he "typically worked Monday through Saturday [from] 8 a.m. to 8 p.m. averaging 50 to 60 hours per week." (Compl. ¶ 26.) By contrast, in his affidavit he states that he "typically worked from 8 am to 8 pm Monday through *Friday*, averaging about 55 hours per week." (Pl.'s Aff. ¶ 8.) Coronado offers no explanation for this discrepancy.[4]

Furthermore, Coronado states in both his complaint and affidavit that he was paid $170 per day. (*Id.* ¶ 3; Compl. ¶ 28.) And according to his affidavit, his average earnings were "$750-$800 per week." (Pl.'s Aff. ¶ 19.) But these two numbers do not align: if he worked five days a week

---

[2] The quoted language appears in a previous version of IWOWA, enacted in 2018. *See* An Initiation of Legislation, 2018 Mich. Legis. Serv. P.A. 337 (West). That version has since been superseded by a 2025 amendment that alters the language regarding the FLSA exemption. *See* An Act to Amend 2018 PA 337, 2025 Mich. Legis. Serv. P.A. 1 (S.B. 8) (West). But the 2018 version applies here because Coronado's claims accrued in 2024, before the amendment. *See Frank W. Lynch & Co. v. Flex Techs., Inc.*, 624 N.W.2d 180, 182 (Mich. 2001) ("[S]tatutes are presumed to operate prospectively unless the contrary intent is clearly manifested."). It is thus unnecessary to determine whether the amended language entails the same result.

[3] The formula used by Coronado to determine a regular hourly rate for a worker who is paid by the day—i.e., dividing weekly pay by the number of hours—accords with Department of Labor regulations. *See* 29 C.F.R. § 778.112. Although these regulations are an interpretation of the FLSA's language and are thus not binding, *see Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 267 (5th Cir. 2000); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the Court finds their calculation method to be reasonable.

[4] Coronado also states that for the two weeks when he was in Indiana, he started the day at 8:00 a.m. but ended somewhere between "6 p.m. to 8 p.m." (Pl.'s Aff. ¶ 8.) In other words, he apparently worked slightly fewer hours while in Indiana, which should affect the regular pay rate and the ultimate calculation of overtime owed. It is not clear that Coronado adjusts for that effect in his calculations.

(as stated in his affidavit) he should have made $850 a week; if he worked six days a week (as alleged in his complaint) he should have made $1,020 a week.  Moreover, if Coronado was paid on a daily rate and generally worked the same number of days each week, it is not clear why his weekly pay would have varied at all.  And when it comes to calculating his regular pay rate, Coronado simply uses the $800 per week rate instead of $750 (or perhaps some average of the two).  Although one might assume that rounding the weekly pay rate up would benefit Defendants—the more Defendants compensated Coronado, the less they should be liable for—in this case the rounding actually slightly helps Coronado because it results in a higher regular rate and thus a higher overtime rate.[5]

In sum, there are too many discrepancies and unwarranted assumptions within Coronado's overtime damages calculation.  The Court therefore declines to enter default judgment unless and until Coronado can establish with reasonable certainty the damages to which he is entitled.

### B. Failure to Pay Minimum Wage

The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages" of at least "$7.25 an hour."  29 U.S.C. § 206(a)(1)(C).  Similarly, in 2024 IWOWA provided for a minimum wage of $10.56 an hour.  *See* Mich. Comp. Laws § 408.934 (2019).  Here, IWOWA's exemption

---

[5] To illustrate: Coronado calculates that his regular pay rate was $14.55 per hour ($800 divided by 55), for an overtime rate of $21.82 and a weekly pay of $909.09.  Thus, Coronado argues he is entitled to $109.09 per week ($909.09 minus the $800 he was actually paid).  (Pl.'s Aff. ¶¶ 19–22.)  But if Coronado was paid $750 a week, his regular rate would be $13.64 per hour ($750 divided by 55), for an overtime rate of $20.46 and a weekly pay of $852.50.  Thus, Coronado would only be entitled to $102.50 per week ($852.50 minus the $750 he was actually paid).

Coronado's rounding up of his weekly pay figure also increases his potential recovery on his retaliation claim, which is derived from the difference between what Defendants paid him and what he made elsewhere.  If Coronado chooses to re-plead his retaliation claim (*see infra* Part III.C), he will have to clarify his weekly pay in order to be entitled to damages.

for FLSA-covered employers is inapplicable because the state minimum wage is higher than the federal.  *See id.* § 408.940(1) (2019).

Coronado's minimum wage claim is based on the allegation that Defendants paid him late for four weeks and did not pay him at all for one week.  The Court finds that Coronado has stated a claim as to the one week of unpaid wages, but not as to the late wages.  "Courts have long interpreted the FLSA as requiring that" payments of wages to which employees are entitled "be timely made."  *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 590–91 (6th Cir. 2002); *see Athan v. U.S. Steel*, 364 F. Supp. 3d 748, 753 (E.D. Mich. 2019) ("[T]he right to payment of minimum wage under FLSA is the right to 'on-time' payment." (citing *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 707 (1945))).  Thus, "[a]n employer violates § 206 when it fails to pay a minimum-wage worker for the full number of hours she worked in a timely manner."  *Athan*, 364 F. Supp. 3d at 753.  Here, Coronado alleges that Defendants' checks initially bounced and had to be re-issued, but he provides no details about the timeline, so the Court cannot determine whether the ultimate payments made by Defendants were timely.  Thus, Coronado has not stated a claim as to the delayed wages.[6]

Coronado *has* stated a claim as to the unpaid week under both the FLSA and IWOWA, as an unpaid wage is certainly less than $7.25 or $10.56.  But Coronado has not sufficiently established the damages to which he is entitled for these claims.  In particular, he does not specify how many hours he worked during the week that he was not paid; he appears to simply apply the 55-hours-per-week figure that, as discussed above, is called into question by other evidence he provides.  Moreover, Coronado incorrectly asserts that his damages would be based on the actual

---

[6] Coronado provides no argument or case law regarding whether IWOWA similarly allows recovery for late-paid minimum wages.  Because the Court finds Coronado has not stated a claim for the above reasons, it does not resolve this legal question.

wages he earned that week, i.e. $800.  The FLSA allows recovery of "the amount of [the employee's] unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Thus, if an employee is not paid at all for hours worked, the FLSA only entitles them to recover the amount the employer was *required* to pay them based on the minimum wage and any overtime—not the amount the employer promised to pay based on the regular hourly rate.  *See Young v. Fam. Matters Learning Ctr., LLC*, No. 1:25-CV-262, 2026 WL 89560, at *4 (S.D. Ohio Jan. 13, 2026) ("[A]n employee's recovery is limited to the federal minimum wage; the FLSA does not cover the difference between the federal minimum wage and the employee's regular wage, called 'gap time.'").  While Coronado could perhaps bring a contractual claim for the difference between the minimum wage and his promised wage, such a claim does not fall under the FLSA.

Similarly, IWOWA provides that an employee may recover "the difference between the amount paid and the amount that, but for the violation, would have been paid the employee under this act and an equal additional amount as liquidated damages."  Mich. Comp. Laws § 408.939. The similarity between this provision and the FLSA recovery provision suggests that the same logic applies: Coronado can only recover the amount the employer was *required* to pay him by the minimum wage and overtime provisions, not the amount the employer promised to pay him.

In sum, Coronado has not stated a claim as to the four weeks of delayed wages and has not established damages for the one week of unpaid wages.

### C. Retaliation

The FLSA provides that "[n]o employer shall discharge or in any manner discriminate against any employee . . . because the employee . . . has" "objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of" the FLSA.  29 U.S.C. § 218c(a)(5).  Coronado

alleges that Defendants terminated him after he objected to their failure to pay him properly. "[A] complaint alleging discrimination and retaliation claims [must] . . . allege factual content sufficient to allow a court to 'draw the reasonable inference' that the employer discriminated or retaliated against the plaintiff." *Lee v. Vanderbilt Univ.*, No. 22-5607, 2023 WL 4188341, at *3 (6th Cir. June 22, 2023) (quoting *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012)). Coronado has not met this burden.

The causation element of Coronado's retaliation claim is based entirely on the fact that his termination occurred after he complained to Defendants about his unpaid wages. Mere temporal proximity between the employee's protected conduct and the employer's adverse action is usually not sufficient to support an inference of retaliatory motive, though it may suffice if the two events occur closely enough in time. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523–25 (6th Cir. 2008). Here, however, Coronado does not clarify how much time passed between his complaint about unpaid wages and his termination, so the Court has no information about the temporal proximity and thus no basis on which to infer that the complaint caused the termination. Thus, Coronado has not stated a claim for retaliation under the FLSA.[7]

## IV. CONCLUSION

As discussed above, Coronado has not sufficiently alleged that Defendants paid his wages late and retaliated against him for opposing FLSA violations. He has sufficiently alleged that Defendants did not pay him for one week of work and did not pay him overtime, but he has not

---

[7] Although the Court does not reach the issue of damages because Coronado fails to state a retaliation claim, it notes that Coronado seeks damages for emotional distress but provides no evidence other than the statement that he "felt angry and distressed" when he was terminated. (Pl.'s Aff. ¶ 18.) This bare assertion is insufficient to recover damages. *See Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996) ("[D]amages for mental and emotional distress will not be presumed, and must be proven by 'competent evidence.'").

sufficiently established his damages as to those claims.  Thus, the Court will deny the motion for default judgment without prejudice.


Dated: March 16, 2026                              /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   CHIEF UNITED STATES DISTRICT JUDGE